UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 02-12062-RWZ

BOSTON GAS COMPANY

v.

CENTURY INDEMNITY COMPANY

v.

CERTAIN UNDERWRITERS AT LLOYD'S,
CERTAIN LONDON MARKET INSURANCE
COMPANIES

MEMORANDUM OF DECISION

June 21, 2006

ZOBEL, D.J.

Plaintiff Boston Gas Company ("Boston Gas") operated manufactured gas plant ("MGP") sites in Massachusetts throughout much of the twentieth century. It purchased general commercial liability policies from several different insurers, including defendant Century Indemnity Company ("Century"). Several of the sites sustained environmental damage as a result of MGP operations, for which Boston Gas was ultimately held liable. Boston Gas then sought coverage from Century under certain Century policies issued during the period 1951 to 1969. Century disputed certain aspects of coverage and asserted that Boston Gas should seek payment from all of its insurers. Boston Gas sued, Century counterclaimed and additionally brought third-party claims against other Boston Gas insurers, including Certain Underwriters at Lloyd's, London and

Certain London Market Insurance Companies (collectively, "the London Insurers"). Boston Gas and Century ultimately proceeded to trial on the question of Century's liability with respect to a single site located in Everett, Massachusetts ("the Everett site"), and on December 6, 2005, the jury returned a unanimous verdict in Boston Gas's favor, awarding damages exceeding $6 million. Currently pending are two post-trial motions.

I.   Century's Motion for Certification

Century seeks certification of the question of allocation to the Supreme Judicial Court of Massachusetts ("SJC"). Its motion is joined by the London Insurers and supported by the Complex Insurance Claims Litigation Association ("CICLA") as amicus curiae.[1] The London Insurers and Century previously requested certification on the same issue (##156, 195), and that request was denied (#214). For substantially the same reasons, the instant motion is denied.

The parties agree that Massachusetts law governs. The SJC has never ruled on the allocation issue. A.W. Chesterton Co. v. Mass. Ins. Insolvency Fund, 445 Mass. 502, 506 n.3 (2005). However, the Massachusetts Appeals Court has considered the allocation question and has adopted the "all sums," joint-and-several allocation method that Boston Gas advocates. See Rubenstein v. Royal Ins. Co., 44 Mass. App. Ct. 842 (1998), aff'd on other grounds, 429 Mass. 355 (1999). This ruling has been followed by

---

[1] CICLA's motion for leave to file (#423) is allowed. Although, as Boston Gas points out, no procedural rule provides for filing of amicus briefs in federal district court, courts have inherent authority and discretion to appoint amici. E.g., Resort Timeshare Resales, Inc. v. Stuart, 764 F. Supp. 1495, 1500 (S.D. Fla. 1991); Fluor Corp. v. United States, 35 Fed. Cl. 284, 285 (Fed. Cl. 1996).

lower Massachusetts courts.  See Commercial Union Ins. v. Gillette Co., No. 012917, 2004 WL 1427157 (Mass. Sup. Ct. 2004).  As I previously noted, see Boston Gas Co. v. Century Indemnity Co., No. 02-12062, 2005 WL 212621, at *2 (D. Mass. Jan. 31, 2005), federal courts predicting state law rely upon state appellate decisions "unless . . . convinced by other persuasive data that the highest court of the law would decide otherwise."  Comm'r v. Bosch's Estate, 387 U.S. 456, 465 (1967).  Rubenstein and its progeny thus compel me to adopt the "all sums," joint-and-several allocation method, in the absence of compelling information indicating that the SJC would choose another allocation method.  See Liberty Mut. Ins. Co. v. Black & Decker Corp., 383 F. Supp. 2d 200, 215 (D. Mass. 2004) (adopting "all sums" allocation method based on Massachusetts appellate decisions).  The SJC has indicated that it may someday consider the allocation issue, see Chesterton, 445 Mass. at 506 n.3, but such dicta reveals only that allocation method remains an open question.  It does not constitute "persuasive data" that the SJC will necessarily reject the "all sums" approach.

In any event, certification is appropriate only when the disputed question of law "may be determinative of the cause." Mass. S.J.C. Rule 1:03.  Century has not established that the allocation issue is, in this case, outcome-determinative.  Even if Century is held jointly and severally liable, it may seek equitable contribution from other insurers, see Rubenstein, 44 Mass. App. Ct. at 852, and it may also be able to obtain contribution under the "other insurance" clauses in its policies, see Mission Ins. Co. v. United States Fire Ins. Co., 401 Mass. 492, 499 (1988).  Indeed, even the cases upon which Century relies state that, as between insurers, either allocation method will result

in allocation "among the insurance companies on the risk." Owens-Illinois, Inc. v. United Ins. Co., 138 N.J. 437, 466 (1994) (noting that "[n]o great difference in principle" separates pro rata from joint-and-several allocation). There may well be benefits to pro rata allocation, which may be more efficient than joint-and-several allocation, see 221 F.3d 307, 323 (2d Cir. 1999), or provide a more accurate reflection of environmental damage, see Consolidated Edison Co. of N.Y., Inc. v. Allstate Ins. Co., 98 N.Y.2d 208, 222-24 (2002). Cf. Liberty Mut., 383 F. Supp. 2d at 215 (noting advantages of pro rata allocation but finding that Massachusetts case law required application of joint-and-several allocation). But such benefits do not render allocation methodology a case-determinative issue, where a defendant insurer may still effectively allocate liability among all triggered insurers via a contribution claim.

Accordingly, Century's motion for certification is denied.

II.     Boston Gas's Motion for Judgment

Boston Gas moves for entry of final judgment with respect to the Everett site based on the jury's verdict. Century opposes on grounds that outstanding legal issues preclude entry of final judgment under Fed. R. Civ. P. 54(b).

First, Century argues that judgment cannot be entered until allocation has been resolved. As explained above, however, I have already ruled that joint-and-several allocation is appropriate. Second, Century argues that a dispute exists concerning self-insured retentions ("SIRs"), which must be resolved before entry of judgment. Specifically, Century contends that Boston Gas is required to exhaust every SIR for every policy it held from at least 1951 through 1986. Boston Gas, however, seeks

4

indemnification only under one Century policy, XCP-3547.  It is therefore required to exhaust only the SIR associated with that policy—in this case, $100,000.  To the extent that Century relies upon the principles of exhaustion espoused in Chesterton, that case is inapplicable since it concerned exhaustion requirements in the context of a statutory fund.  445 Mass. at 523-24.  Other cases cited by Century are likewise inapposite, since they analyze the question of exhaustion in the context of a pro rata allocation methodology.  E.g., Maremont Corp. v. Continental Cas. Co., 326 Ill. App. 3d 272, 279-80 (2001).  In cases in which allocation is joint-and-several, however, the insured is required to exhaust only the SIR associated with the policy under which the claim is made.  See Chicago Bridge & Iron Co. v. Certain Underwriters at Lloyd's, London, 59 Mass. App. Ct. 646, 661-62 (2003) (applying joint-and-several allocation under Illinois law, and requiring insured to exhaust SIR only for occurrences as to which claims had been made).  Because Boston Gas agrees that it must deduct $100,000 from the amount of damages awarded by the jury, in order to exhaust the $100,000 SIR associated with the XCP-3547 policy, no issue with respect to the SIR prevents entry of judgment.

      Third, Century argues that judgment cannot be entered until the court determines Century's entitlement to a judgment credit or offset based upon Boston Gas's settlement with AEGIS.  Century is correct that it "has a right to reduction in damages equal to the portion of the [AEGIS] settlement, if any, that can be allocated to the [Everett] site[]."  Liberty Mut., 383 F. Supp. 2d at 216-17; accord Rubenstein, 44 Mass. App. Ct. at 855-56.  Even if the AEGIS settlement "does not identify specific

5

sites," attribution of some amount of the settlement to the Everett site might nevertheless be possible and appropriate. Id. at 217 n.14.  But whether Century's entitlement to a potential setoff should necessarily preclude entry of judgment under Rule 54(b) is another matter.  In Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 11 (1980), the Supreme Court confronted the question of whether Rule 54(b) judgment was properly entered, where "the possibility of a setoff" might eventually reduce the amount that the defendant owed the plaintiff.  The Court held that this possibility, while "not an insignificant factor" weighing against entry of judgment, was nevertheless outweighed by the reasons in favor of judgment, which included the large amounts owed to the plaintiff as well as the fact that litigation of the remaining claims was expected to be lengthy.  Id.  In the absence of any evidence that either party "is or will become insolvent," the Supreme Court held that judgment was appropriately entered.  Id. at 12.  A similar analysis applies here.  Century has not argued that entry of judgment will subject it to insolvency, nor has it offered any other reason precluding entry of judgment.  Thus, while Century may well be entitled to seek a credit based upon the AEGIS settlement, it has not shown that Rule 54(b) requires that judgment be delayed until it has litigated that claim.

Fourth, Century objects to the entry of declaratory relief with respect to future costs.  Specifically, it objects to entry of judgment entitling Boston Gas to indemnification for all future costs "for the investigation and cleanup at and around the Everett site." (Boston Gas's Proposed Order of Final Judgment 6-7).  Essentially, Century argues that declaratory relief is inappropriate because Boston Gas may, in the

6

future, seek indemnification for damage that resulted from MGP operations at the Everett site, but that was not specifically litigated during the trial.  For example, Century notes that Boston Gas may well seek indemnification for any costs it incurs in relation to remediation of the Mystic River, which abuts the Everett site.  Century argues that because contamination of the Mystic River was not adjudicated at trial, Boston Gas is not entitled to indemnification for such remediation costs.  (Century's Opp. 12).  In cases involving ongoing cleanup operations and potential future government enforcement actions, courts have held that the insured is entitled to declaratory relief for all future associated cleanup costs.  See, e.g., Rockwell Int'l Corp. v. IU Int'l Corp., 702 F. Supp. 1384, 1388 (N.D. Ill. 1988).  But see United States v. Mottolo, 107 F.R.D. 267 (D.N.H. 1983) (requiring plaintiff to specify all CERCLA damages upfront, but recognizing that "other courts have granted declaratory judgments holding defendants liable for future CERCLA cleanup costs").  Here, the "essential fact[s]" establishing Boston Gas's entitlement to indemnification for remediation costs at the Everett site have been determined—i.e., property damage at the Everett site during the covered period causing continuing contamination of soil and groundwater, and the absence of any exclusion that would excuse Century's obligation to indemnify.  Rockwell, 702 F. Supp. at 1388.  Accordingly, Boston Gas may properly seek declaratory relief as to such future costs.

     Fifth, Century disputes Boston Gas's entitlement to attorneys' fees and costs.  It cites Liberty Mutual, in which the court predicted that the SJC would not allow successful insureds to recover attorneys' fees and expenses "attributable to

establishing the existence and scope of the duty to indemnify." 383 F. Supp. 2d at 220. That case, however, was decided in 2004, in the context of ambiguous rulings from the SJC. Id. (noting that the SJC's rulings in Rubenstein, 429 Mass. at 359, and Preferred Mut. Ins. Co. v. Gamache, 426 Mass. 93, 96 (1997), "left open" the question of an insured's entitlement to fees for indemnification disputes). Since that time, the Massachusetts Appeals Court has expressly held that a prevailing insured is entitled to attorneys' fees and expenses attributable to coverage litigation. Safety Ins. Co. v. Day, 65 Mass. App. Ct. 15, 25-26 (2005) ("The prevailing insured is entitled under her contract both to a defense and to indemnification; if she must incur legal fees and related expenses to obtain either, the value of her contract is diminished."). Boston Gas has informed the court that the SJC has agreed to consider the issue in a case to be argued later this year. But without any indication that the SJC will overturn the appellate court's decision, this court must follow its precedent. Bosch's Estate, 387 U.S. at 465; Liberty Mut., 383 F. Supp. 2d at 215. Century points to Chicago Ins. Co. v. Lappin, 58 Mass. App. Ct. 769, 785 (2003), in which the Appeals Court held that insureds were "shield[ed] . . . from litigation expense" only for the duty to defend, not the duty to indemnify. But that case predated Safety, in which the Appeals Court's decision is unequivocal. Century also argues that Safety is distinguishable because it involved an individual rather than corporate plaintiff, but it points to nothing in Safety or its predecessors suggesting that their logic was based upon the non-corporate status of the plaintiff. Accordingly, under current Massachusetts case law, Boston Gas is entitled to reasonable attorneys' fees and costs.

8

Finally, Century disputes Boston Gas's entitlement to prejudgment interest.[2] Century argues that imposing prejudgment interest would be unfair because Boston Gas has not submitted any invoices for payment to Century. The identical argument was raised and rejected in Liberty Mutual. 383 F. Supp. 2d at 208. The court held that the insured was entitled to prejudgment interest, although it still needed to "demonstrate when each bill was paid." Id. at 209. Century also argues that Boston Gas is not entitled to any prejudgment interest prior to October 22, 2002, the date on which it filed suit. It relies upon Mass. Gen. L. ch. 231, § 6C, which provides that interest accrues "from the date of the commencement of the action" in cases in which "the date of the breach or demand is not established." Century contends that because the jury never determined date of breach, interest can only accrue from the date of suit. This line of argument is also foreclosed by Liberty Mutual. In that case, the insured—like Boston Gas—had provided notice to the insurer, but apparently not formally made a demand by presenting invoices to the insurer. Id. at 208. The court held that under Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 842 (1986), the insured was entitled to prejudgment interest calculated from the date on which it paid the invoices. Id. at 209 (insured entitled to prejudgment interest "from the date of payment (per Sterilite) for post-notice expenses"). Boston Gas, which seeks interest running only from the date on which it "incurred costs that were in excess of $100,000,"

---

[2] The parties agree that post-judgment interest accrues at the federal statutory rate, under 28 U.S.C. § 1961. (Century's Opp. 18; Boston Gas's Reply Mem. 7).

is thus within its entitlement to prejudgment interest under <u>Liberty Mutual</u> and <u>Sterilite</u>. (Boston Gas's Proposed Order of Final Judgment 6).

III.     <u>Conclusion</u>

All issues raised concerning the Everett site have been resolved by the jury and the court, and no reason exists why judgment as to this site should be delayed. Accordingly, Boston Gas's application for an order of final judgment and for declaratory relief (#415) is granted. Century's motion to certify (#425) is denied. CICLA's Motion for Leave to File an Amicus Brief (#423) is allowed. The London Market Insurers' Motion for Joinder (#428) is allowed.

Judgment may be entered for plaintiff.

    O6/21/06                          /s/ Rya W. Zobel
     DATE                             RYA W. ZOBEL
                                      UNITED STATES DISTRICT JUDGE