UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 02-12062-RWZ


BOSTON GAS COMPANY
d/b/a KEYSPAN ENERGY DELIVERY NEW ENGLAND

v.

CENTURY INDEMNITY COMPANY


MEMORANDUM ON REMAND

March 18, 2010


ZOBEL, D.J.

For more than 60 years, from 1908 until approximately 1969, plaintiff, Boston

Gas Company, manufactured gas at several locations including Everett,

Massachusetts.  The manufacturing process created by-products that contaminated the

ground and water around each manufacturing site, and ultimately nearby waterways.  In

1995 an investigation uncovered the contamination at the Everett site.  Boston Gas

was, and is, under the law of Massachusetts, strictly liable for all costs associated with

such an investigation and the cleanup of contamination even though it had sold the real

estate in 1970.  Plaintiff did clean the site at considerable expense and now seeks to

recover these costs under a series of CGL[1] policies it had purchased from Century

---

[1]At the time the policies were issued, the acronym referred to "comprehensive
general liability;" now it stands for "commercial general liability."  Regardless of the
name, the policies are designed to protect the insured against losses to third parties

Indemnity Company.  Century contested liability on several theories and invoked several exclusions in the policies.

When the case went to trial this court made a number of rulings that shaped the trial and the verdict.  First and foremost it held that liability of plaintiff's several insurers over time was all sums, not, as Century urged, pro rata.  Second, it asked the jury to determine the applicability of the "owned property exclusion" without asking it to apportion the costs incurred to clean plaintiff's own property and those spent to remediate off-site pollution.  The jury returned a verdict for plaintiff; it found that all policies under which plaintiff claimed had, in fact, been issued for the years in question and that hazardous materials existed on the site in each policy year.  It found against defendant as to each exclusion asserted and assessed damages in the amount of $6,227,327.90.

Defendant appealed.  The Court of Appeals affirmed in part, reversed in part and ordered a new trial with respect to apportionment under the own property exclusion.  Boston Gas Co. v. Century Indem. Co., 529 F.3d 8 (1st Cir. 2008).  And it certified to the Supreme Judicial Court ("SJC") the question whether, in the context of this kind of case, direct liability of the sued insurer is joint and several with other insurers or prorated among all, and, if prorated, what allocation method is to be used.  The SJC adopted the pro rata approach and ruled that the proper allocation method is time-on-the-risk.  The Court of Appeals thereupon entered a judgment ("Judgment") that detailed the parties' ongoing disagreements about the meaning of the verdict and

---

that arise from the operation of the insured's business.

requested this court to interpret the jury's verdict and its viability under the new allocation rule.  It also requested this court to determine whether the missing policy, 1951 - 1960, contained an own-property exclusion.

**This Court's Responses to the Questions Posed in the Judgment**

1.  Because the case was tried on an all sums theory, Century was liable for all damage plaintiff sustained if a part of the damage occurred during the policy period but cannot be apportioned to that period alone.  Although the question to the jury asks about property damage "caused during the years for which [plaintiff] had coverage," that was not a necessary element under that theory.  Moreover, the evidence of damage was not circumscribed by the years of coverage.  There was evidence of damage before the first of these policies issued and there was testimony that it would continue past the expiration of the last of them.  In addition, the damages the jury found may not be the same under a pro-rata allocation because it was not asked to determine the start and end dates of the contamination which are essential facts for a pro rata finding.  Therefore, I cannot fairly say that the evidence that was adduced, the arguments that were made and the court's rulings, instructions and questions to the jury would have been the same had the trial proceeded on a pro rata approach.  This verdict tried on one theory cannot, without some finesse, support another, very different theory.

2.  This question concerning removal of a tank after 1969 requires no further elucidation from this court.

3.  The jury did not determine the existence or size of any self-insured retention

with respect to the missing policies because it was not asked to do so.  It was not asked to do so because it was a fact not relevant to the case as tried.  Accordingly, it should not be read into the verdict by implication even though there was evidence that the missing policies were similar to the found ones, especially because some had different policy limits.

4.  A similar question is raised concerning any own-property exclusion in the missing policies.  Here, too, plaintiff relies on the testimony of similarity of all the policies but in this instance the issue was tried.  It was highly relevant and the jury was expressly asked to consider the applicability of this exclusion.  It did so and made findings that the cost of remediation was incurred not solely for cleaning up plaintiff's own property.  These circumstances permit the inference, which I draw, that  the jury considered all policies in its answer.

**Summary and Procedural Status**

The jury's verdict is now final as to

1.  The limits of liability of the missing policies;

2.  The existence of contamination at the Everett site during all policy years; and

3.  The exclusion based on plaintiff's alleged knowledge of the existence of contamination before the effective date of any policy, which the jury determined did not apply.

The jury's verdict that the own property exclusion does not apply is also final.  However, in accordance with the opinion of the Court of Appeals and the Judgment, a new trial is necessary (a) to ascertain whether the DOMAC expansion work caused

4

pollution off site; and (b) to apportion all costs incurred between those benefitting plaintiff's own property and those remediating contamination off site.

Finally, a new trial is necessary also to determine plaintiff's damages and defendant's liability under the pro rata approach and, incident thereto,  the existence

and size of any self-insured retention under the missing policies.

| <u>March 18, 2010</u> | <u>/s/Rya W. Zobel</u> |
|:---:|:---:|
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |